JOHNSON, Judge.
This is an appeal from the verdict of guilty and sentence as to the first count of a three count information, and from the order denying motion for new trial or in the alternative, judgment notwithstanding the verdict.
The parties will be referred to herein as they were below, and defendant, appellant, as defendant and the appellee as State.
The defendant was informed against in the Criminal Court of Record in and for Duval County, Florida, charging the defendant with the crime (Count 1) of assault with intent to commit rape (Count 2) attempted incest and (3rd Count) assault and battery. The first two counts involved the 13 months old child of the defendant, there being no dispute as to the father-daughter relationship existing.
The third count involved assault and battery on the defendant’s wife, who was the mother of the child involved in counts one and two.
The defendant was represented at the trial by the Public Defender who is also prosecuting this appeal.
At the close of the State’s case, a motion was made by defense counsel for a directed verdict in favor of defendant as to all three counts. This motion was denied and the defense presented its evidence, by having the defendant testify. At the close of the defendant’s case, the motion for a directed verdict was renewed. The court granted the motion as to Count 2, attempted incest, pointing out, in response to the prosecutor’s assertion that the doctor’s testimony was very strong, that the doctor “Merely stated a conclusion on his part that it was a blunt instrument- — -blunt smooth instrument, or something that could cause this damage, but incest, there — I am going to sustain that motion and deny the motion to the other”.
Circumstantial evidence was relied upon entirely by the State to prove the commission of the act by the defendant. It appears that the defendant and his wife had had family trouble before. Their marriage occurred at a time when the defendant was on parole from a long prison sentence in Alabama. After their marriage and several months before their baby was born, the baby involved in this cause, the defendant’s parole was revoked upon a charge by his wife of assault and battery on her. Defendant escaped prison several months after the baby was born and he and his wife resumed marital relations, but moved from Alabama to Jacksonville, Florida, assumed a different name and appeared to pursue a new life together each working during the day. The baby was left with a baby sitter during the day and was picked up about 6:00 P. M. each work day by the defendant and/or his wife. The defendant had quit his job a few days before he was arrested, but made it a practice to pick up his wife about 5:00 P. M. at the laundry where she worked, then .picked up the baby and returned to the motel where they were living in rented quarters. On the day in question, the defendant went to the laundry about 5 :00 P. M. to pick up his wife, but was told she had already gone. He drove back to the motel and waited until about 6:00 P. M. for his wife to come home, and when she didn’t show up, *599 he went to the baby sitter’s to get the baby. While there, his wife called him, and he told her to come home by taxi as he was afraid to come back to town. He bought the baby some milk and himself some alcoholic beverage.
He remained at the motel for quite a ■while, with the baby, then locked the door and started looking for his wife. He got back to the motel about ten o’clock and his wife was there in front of the motel. Arguments between the wife and the defendant resulted in her going to a nearby motel to call the police. The defendant’s wife testified that she got to the motel, about 10:00 P. M. and went into the apartment, •she and the defendant started arguing and woke the baby up. That defendant started hitting her and that while this was going •on, she turned the baby around and pinned a ■diaper on; that the defendant was trying ■to hit her while she was putting the diaper •on the baby, and she was “trying to move the baby so she wouldn’t get hurt.” In response to the question: “Were you ever thrown down on the bed?” The answer was “Yes, I was, and he choked me and threw the baby bottle at me, and threw his •shoe at me.” She did not notice anything unusual about the baby at that time. On further direct examination of the defendant’s wife, the following questions were asked and answers given: “Did you look between the baby's legs? A. No, I didn’t. I just turned the baby around and dried her. That was it.”
It further appears from the Doctor’s testimony that the injury could have been •caused by a thumb or finger. Also, that there were several other people at the motel who could have entered the apartment of the defendant where the baby was alone for ■several periods of time. The testimony of the officers indicate that the defendant was drinking, but does not indicate he was •drunk. In fact, the officers indicated from their testimony that it was apparent that the family argument would continue if the defendant and his wife were left together, so they called the defendant out of his apartment and placed him under arrest for drunkenness. One of the officers testified that later, the defendant appeared surprised when he learned his baby had been hurt.
The prosecuting attorney used some very strong language in describing the defendant in his closing argument, which at least bordered on being prejudicial, but inasmuch as we think this case must be reversed on other grounds, we will not pursue this question further in this opinion.
The evidence in this case is, in our opinion, insufficient to stand the test necessary to convict on circumstantial evidence. There are several hypotheses existing from the evidence in this case. It could have been the wife’s thumb while dodging the defendant. It could have been one of at least four other people living at the motel committing the act while the defendant was gone, looking for the wife. Further, the wife’s testimony that she did not see anything wrong when she “dried” the baby, leaves us in grave doubt as to when the act was committed. The defendant was never with the baby alone after the wife and mother “dried” her and put on the diaper.
Due to the fact that the jury and the trial court are in a position to view the demeanor of the witnesses and determine therefrom to some extent, at least, as to their credibility, this court is reluctant to overturn the verdict of a jury or reverse a trial court’s order denying a directed verdict or granting a new trial, but when it appears to this court that the jury must have been influenced erroneously and the court blinded from taking an arms-length unbiased look at the evidence, as appears to be the fact here, we will not hesitate to reverse in order to see justice done.
The law of circumstantial evidence is well and clearly defined in numerous state, federal and other states’ decisions. I think the law controlling in the case sub judice is well pronounced in the case cited by defendant in his brief of Pacetti v. State; *600 Fla.App., 157 So.2d 445 (2nd DCA) wherein we find the following pronouncement:
“ * * * [ W] e merely note that the many decisions of the courts of Florida are to the general effect that such evidence must be of a conclusive nature and tendency; and it must be consistent with guilt and inconsistent with innocence, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged.
“While it has been said many times that absolute metaphysical and demonstrative certainty is not essential to sufficient proof by circumstances in a prosecution for a crime, it has also been said that:
“ ‘Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, it [sic] is not sufficient to sustain conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict. Circumstantial evidence which leaves uncertain several hypothesis, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt. Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence. * * * >»
We find that the evidence is insufficient to meet the necessary test to convict on circumstantial evidence and therefore, the sentence and judgment appealed are reversed and set aside.
WIGGINTON, Acting C. J., and STUR-GIS, J., concur.